**Ex parte James Aubrey SNOW.**

**No. 01–84–0368–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 9, 1984.
Rehearing Denied Sept. 13, 1984.

148

Robert E. Talton, Pasadena, for appellant.

Jolene Wilson-Graham, Houston, for appellee.

Before EVANS, C.J., and BULLOCK and WARREN, JJ.

## OPINION

WARREN, Judge.

Relator, James Aubrey Snow, complains that he has been illegally confined by the Sheriff of Harris County, Texas, by virtue of an order of commitment issued by the judge of the 309th Judicial District Court of Harris County, Texas.

On May 29, 1984, the trial court found relator in contempt of its order of September 22, 1980, to pay $100 each 5th and 20th of the month for child support. Relator failed to make certain payments specified by respondent's motion for contempt, and he was held in contempt for being $2700 in arrears. He further was ordered confined for 60 days and until he purged himself by paying the arrearage, attorney's fees of $480, and costs of court. We granted leave to file this writ of habeas corpus and ordered relator released from jail on bond pending a final determination of the matter.

Relator raises five points of error contending that his restraint is illegal. In his first point he urges that the May 29, 1984 order committing him to jail is void because there is no underlying written order of contempt to support it.

The commitment order states, in relevant part:

[C]ame on to be heard the above entitled and numbered cause wherein James Aubrey Snow stands charged with contempt of Court in failing and refusing to comply with the terms of the judgment by this Court entered on or about the 22 day of September, 1980 wherein the Court ordered him to pay the sum of $100.00 each 5th & 20th of each month to Georganne Jill Snow through the Harris County Probation Department for the support and maintenance of his minor child ... AND IT APPEARING to the Court that the said James Aubrey Snow is guilty of contempt of this Court in that he has failed and refused to pay child support as heretofore ordered in an amount of $2700.00.

IT IS ACCORDINGLY ORDERED, ADJUDGED AND DECREED by the Court that the said James Aubrey Snow be and is hereby found guilty of contempt of Court by reason of his failure and refusal to make the payments of child support heretofore ordered in an amount of $2700 in defiance of the terms of the decree hereinabove referred to....

Relator does not contend that the court orally held him in contempt. Apparently, relator contends that the commitment order is void because there is no *separate* judgment of contempt.

An order committing a contemnor to jail without a valid written order on which it is based is void. *Ex parte Slavin*, 412 S.W.2d 43 (Tex.1967). Further, one may not be confined without a written commitment order. *Ex parte Martinez*, 160 Tex. 328, 331 S.W.2d 209 (1960). A commitment order that is not based on a written order of contempt is also void. *Ex parte Barnett*, 600 S.W.2d 252 (Tex.1980). However, there is no particular form required of either the order of contempt or the commitment order, provided that their essential elements appear in a written document. Nothing prevents a court, as was done here, from combining the two orders into one document. The instrument entitled "ORDER OF COMMITMENT" clearly states in what respect the Court's underlying order has been violated, *Ex parte Proctor*, 398 S.W.2d 917 (Tex.1966), and is not void. Relator's first point is overruled.

In his second point relator contends that the underlying divorce decree does not order him to pay child support, because it uses the language "it is decreed," and therefore his confinement is illegal.

For a person to be held in contempt for disobeying a court decree, the order must specify the details of compliance in language that is clear and unambiguous. *Slavin*, 412 S.W.2d 43. Further, the order must be in the form of a command directed to the person rather than a mere declaration of the occurrence of an event in which he may be involved. *E.g., Ex parte Nash*, 595 S.W.2d 571 (Tex.Civ. App.—San Antonio 1979, no writ). However, the mere fact that the court *"DECREED"* that JAMES AUBREY SNOW pay to GEORGANNE JILL SNOW child support... through the Harris County Child Support Division" rather than *ORDERED* him to do so does not lessen the effect of the court's clear order. To "decree" is "to command or enjoin authoritatively." Webster's 3d International Dictionary (1976). The language in the divorce decree was sufficient to apprise relator of his duty to pay child support. *But see, e.g., Ex parte Duncan*, 462 S.W.2d 336, 337 (Tex.Civ.App. —Houston [1st Dist.] 1970, no writ). Relator's second point of error is overruled.

Relator argues in his third point of error that the trial court erred in requiring him to testify in abrogation of his privilege against self-incrimination.

One charged with criminal contempt may assert the privilege against self-incrimination through counsel when the contemnor is called as an adverse witness, *Ex parte Werblud*, 536 S.W.2d 542 (Tex.1976), although the privilege may be waived. *Ex parte Tankersley*, 650 S.W.2d 550 (Tex. App.—Fort Worth 1983, no writ).

In the instant case respondent testified extensively at the contempt hearing as to the child support arrearage, specifying what payments were made, when, and in what amount. Relator was called next as an adverse witness, but before he could take the stand his attorney objected and was overruled. The court ordered relator to testify about his employment history and his ability to pay child support, despite the fifth amendment objection made by counsel. Evidence that child support payments are in arrears is prima facie proof of contempt. *Whatley v. Whatley*, 493 S.W.2d 299, 303 (Tex.Civ.App.—Dallas 1973, no writ). Relator's contempt was proven before he took the stand, and any error in compelling him to testify was harmless. His third point is overruled.

Next, relator contends that he was never identified in the hearing as the same person who was a party to the di-

**150**

vorce or to the motion for contempt. The issue of identity was never raised at trial: relator was given notice of the hearing on the motion for contempt, was ordered to appear, and did so, represented by counsel. It is unnecessary to have identified relator of every stage of the contempt proceedings. *Ex parte McManus*, 589 S.W.2d 790 (Tex.Civ.App.—Dallas 1979, no writ). Relator's fourth point of error is overruled.

In his final point of error relator argues that he proved his inability to pay the child support, and that his confinement is therefore illegal. The judgment directs that relator be confined for a period of 60 days, and thereafter to remain until he purges himself by paying the child support arrearage. As such this portion of the order is civil or coercive contempt, and in order to determine whether relator has the ability to pay, courts have relied on three factors set out in *Ex parte Hennig*, 559 S.W.2d 401 (Tex.Civ.App.—Dallas 1977, no writ):

(1) that the relator lacks sufficient personal or real property which could be sold or mortgaged to raise the needed sum; and

(2) that the relator has unsuccessfully attempted to borrow the sum from financial institutions such as banks, credit unions, and loan companies; and

(3) that the relator knows of no other source, including relatives, from whom the sum could be borrowed or otherwise secured.

559 S.W.2d at 402–03.

The statement of facts from the contempt hearing indicates that relator has been employed intermittently since his divorce from respondent, and currently receives approximately $780 per month in worker's compensation. He testified that he owns two guns, but he does not feel that he can sell them because they are a possible source of income for him. Relator introduced evidence that he has attempted to borrow money from certain banks and was refused, but stated that although he has borrowed money from his mother in the past, she will not loan him money to pay his child support. He also has other relatives, but has not asked them for money.

Relator also testified that he owns a car, and since his divorce from relator he has purchased a motorcycle. During the time he was obligated to pay child support, he has been married and divorced: relator testified that he bought wedding rings and subsequently paid for the divorce.

Despite relator's financial straits, we cannot say that he has met his burden of proving conclusively that he was unable to pay his court-ordered child support. Relator's fifth point of error is overruled.

The writ of habeas corpus is denied, and relator is remanded to the custody of the Sheriff of Harris County.